UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION AT COVINGTON

**CIVIL ACTION NO. 06-165**

**PEGGY S. LOVITT**                                                 **PLAINTIFF**

**VS.**

<u>**OPINION AND ORDER**</u>

**MICHAEL J. ASTRUE,[1] COMMISSIONER
OF SOCIAL SECURITY**                                         **DEFENDANT**

This matter is before the court on the motion for summary judgment of the plaintiff (Doc. 9) and the cross-motion for summary judgment of the Commissioner (Doc. 12).

In reviewing the decision of the ALJ in Social Security cases, the only issue before the court is whether the decision is supported by substantial evidence. <u>Richardson v. Perales</u>, 402 U.S. 389, 390 (1971). "The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. Even if the evidence could also support another conclusion, the decision of the ALJ must stand if the evidence could reasonably support the conclusion reached." <u>Alexander v. Apfel</u>, 17 Fed. Appx. 298(6th Cir. 2001)(unreported)(<u>citing Buxton v. Halter</u>, 246 F.3d 762, 772-73 (6th Cir. Aug. 16, 2001)).

---

[1] On February 12, 2007, Michael J. Astrue became the Commissioner of Social Security. Accordingly, pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, he will be substituted for former Commissioner Jo Anne B. Barnhart as the defendant in this matter.

1

In order to qualify for disability benefits, a claimant must establish that she is disabled within the meaning of the Social Security Act. 42 U.S.C. § 423(a)(1)(D). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(2)(A).

The Social Security Act requires the Commissioner to follow a five-step process when making a determination on a claim of disability. Heston v. Commissioner of Social Security, 245 F.3d 528 (6th Cir. 2001). First, the claimant must demonstrate that she is not currently engaged in "substantial gainful activity." Heston, 245 F.3d at 534 (citing Abbott v. Sullivan, 905 F.2d 918, 923 (6th Cir. 1990)( citing 20 C.F.R. 404.1520(b)). Second, if the claimant is not engaged in substantial gainful activity, she must demonstrate she suffers from a severe impairment. Id. "A 'severe impairment' is one which 'significantly limits . . . physical or mental ability to do basic work activities.'" Id. (citing 20 C.F.R. §§ 404.1520(c) and 416.920(c)). Third, if claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets or equals a listed impairment at 20 C.F.R. part 404, subpart P, appendix 1, then plaintiff is presumed disabled regardless of age, education or work experience. Id. (citing 20 C.F.R. §§ 404.1520(d) and

2

416.920(d)(2000)). Fourth, claimant is not disabled if her impairment(s) does not prevent her from doing her past relevant work. Id. Lastly, even if the claimant cannot perform her past relevant work, she is not disabled if she can perform other work which exists in the national economy. Id. (citing Abbott, 905 F.2d at 923).

The claimant has the burden of establishing that she is disabled, but the Commissioner bears the burden of establishing that the claimant can perform other work existing in the national economy.

At the time of the ALJ's decision, claimant was forty-seven years old. The claimant dropped out of school in the 6th grade and has a limited ability to read and write. The claimant does not have any prior relevant work.

The claimant has previously received social security benefits. She received benefits from January 1993 until August 1995 and then again from April 1998 until January 2002. Her benefits were terminated in 1995 because of excess resources, and in 2002, her benefits were terminated because she went to prison. On November 6, 2003, after she was released from prison, the claimant filed the application for benefits at issue in the case at bar.

The claimant has diabetes. Her chief physical complaint is of back and leg pain. She testified that the pain radiates into her legs causing them to give out on her. In August 2005, the claimant had an x-ray of her lumbar spine that revealed only mild

3

degenerative changes with small spurs at L3-4. The claimant has sought treatment for her pain: she sees Dr. Hansen for pain management and takes Oxycontin, Percocet, and Remoral.

The claimant also had problems with chest and abdominal pain. She asserts that she has depression, but has not sought psychological treatment in at least the last ten years.

At the evidentiary hearing, the ALJ sought testimony from the claimant and a vocational expert. Upon hearing the testimony and reviewing the record, the ALJ performed the requisite five step evaluation for determining disability.

At step 1, the ALJ determined that the claimant had not been engaged in substantial gainful activity since the alleged onset of disability. At step 2, the ALJ determined that the claimant's "back disorder, angina pectoris without ischemic heart disease, diabetes, diverticulosis of the colon/irritable bowel syndrome, and a personality disorder" are "severe" impairments.

At step 3, the ALJ determined that, although claimant has impairments that are "severe," she does not have an impairment or combination thereof that is listed in or equal to one listed at 20 C.F.R. part 404, subpart P, appendix 1. At step 4, the ALJ found the claimant does not have any past relevant work.

At step 5, the ALJ found that the claimant has a residual functional capacity for a significant range of light work, but is restricted to simple, routine, repetitive tasks which require only minimal contact with supervisors, co-workers, and the general public.

The vocational expert opined that given claimant's age, education, work history and the limitations assigned by the ALJ, that a significant number of jobs existed in the national economy that the claimant could perform including cleaner (2,389 jobs locally and 411,055 jobs nationally), unskilled inspector, 795 jobs locally and 106,073 jobs nationally), machine tender, (509 jobs locally and 60,858 jobs nationally), and hand packer, (1,554 jobs locally and 155,982 jobs nationally).  Based on this testimony, the ALJ found the claimant not disabled.

The claimant argues that the ALJ erred in not following the legal principles of res judicata and/or collateral estoppel. Specifically, the claimant asserts that the ALJ should have obtained the files of claimant's previous periods of disability and granted benefits absent a finding that her condition has improved.

Under 20 C.F.R. § 404.902(b), a decision regarding a claimant's reentitlement benefits is an initial determination. Accordingly, it is not subject to res judicata and/or collateral estoppel. See Dugan v. Sullivan, 957 F.2d 1384, 1388 (7th Cir. 1992)(new eligibility determination required upon release from prison); Bunch v. Heckler, 778 F.2d 396, 396 fn. 3 (7th Cir. 1985)(upon release from prison, new application and determination required to obtain benefits).

Upon a claimant's release from prison, an ALJ determining eligibility is not required to adopt the findings of prior disability decisions.  Instead, the ALJ's decision is a new

5

determination. 20 C.F.R. § 404.902(b). Res judicata applies once the decision on reeintitlement is made, but not before. Id. Accordingly, the claimant's argument that the ALJ erred by not utilizing the principles of res judicata lacks merit.

The claimant also argues that the ALJ erred in finding she could perform a range of light work because her back and leg pain precludes her from standing or walking for six hours in an eight hour work day. The claimant argues that her diabetes affects her legs as evidenced by decreased vibratory sensation in her feet upon examination. However, in the same report referenced by the claimant, Dr. Hansen stated that he found the claimant walked with a smooth steady gait, and she was in no acute distress. (AR 268). Her straight leg raises in the sitting and supine positions were negative. Doctor Hansen found she had mild deficit on the left with toe walking and strong on the right. Her heel walking was strong bilaterally. (AR 268).

In addition, treating physician Dr. Goldenberg also noted that although claimant has leg pain she has a steady gait, and normal range of motion. (AR 228, 231, 232). Dr. Goldenberg's June 6, 2005 report states: "Extremities: negative straight leg sign. Normal strength, normal reflexes bilaterally. No muscle tenderness in the back." (Ar. 232).

As the ALJ noted, Dr. Eggerman performed a consultative psychological examination and noted that "[t]he claimant ambulates without signs of physical limitation or discomfort. She sits during the examination without signs of physical

6

limitations or discomfort." (AR. 164). Accordingly, there is substantial evidence to support the ALJ's finding that the claimant can stand/walk six hours in an 8 hour work day.

The claimant also argues that the ALJ erred in her credibility determination because she was reasonably confused as to her highest level of education, and there is no evidence that a physician found her physical complaints lacked credibility. Further, she argues that she received benefits in the past and, therefore, social security officials must have found her credible on these prior determinations.

The Sixth Circuit has held that in light of the Commissioner's opportunity to observe the claimant's demeanor, the Commissioner's credibility finding is entitled to deference and should not be discarded lightly. <u>Kirk v. Secretary of Health and Human Services,</u> 667 F.2d 524, 538 (6th Cir. 1981) <u>cert</u>. <u>denied</u>, 461 U.S. 957 (1983). "If an ALJ rejects a claimant's testimony as incredible, she must clearly state her reasons for doing so." <u>Felisky v. Bowen</u>, 35 F.3d 1027, 1036 (6th Cir. 1994). The ALJ's articulation of reasons for crediting or rejecting a claimant's testimony must be explicit and "is absolutely essential for meaningful appellate review." <u>Hurst v. Sec. of H.H.S.</u>, 753 F.2d 517, 519 (6th Cir. 1985)(citing <u>Zblewski v. Schweiker</u>, 732 F.2d 75, 78 (7th Cir. 1984)).

In the case at bar, the ALJ found the Plaintiff's credibility lacking. The ALJ explained:

> The claimant's credibility is not helped by her virtually non-existent work history. She has earned only $571.36 in

7

her life. One cannot create the inference that she would be working if she could.

The claimant's non-compliance also does not help her credibility. It was noted in March 2005 that she was non-compliant regarding her treatment for diabetes (Exhibit 9F, pages 5-6). Furthermore, drug-seeking behavior was noted at that time. She was noted to still be non-compliant with diabetic treatment when examined in June 2005 (Exhibit 9F, page 9).

The claimant complains of back pain. However, an X-ray performed in August 2005 showed only mild degenerative changes with small spurs at L3-4 (Exhibit 10F, page 57). Dr. Eggerman noted that she ambulated with no signs of physical limitation or discomfort, and that she sat during the examination with no signs of physical limitation or discomfort. He also noted that her level of cooperation was limited (Exhibit 4F, page 4). Although she complained of back pain when examined in March and June 2005, there was no tenderness in the back, range of motion was normal, gait was normal, strength was normal, and straight leg raises were negative (Exhibit 9F, pages 5-9). These findings are inconsistent with allegations of pain ranging from 7-10 on a scale of 1-10, with 10 being the highest level of pain. Although the record shows the claimant has a back disorder that qualifies as "severe", its severity is nowhere near great enough to make it disabling.

The claimant has given conflicting statements regarding her highest level of education. She testified in February 2006 that she has a 6th grade education. However, she stated when she filed her application that she has a 5th grade education, and she told a state agency examiner that she has a 4th grade education (Exhibit 2E, page 7; Exhibit 4E, page 2). Also. There are some conflicting statements regarding her ability to read and write. She testified in February 2006 that she has trouble reading and writing. However, she told Dr. Eggerman that she attended regular classes and is able to perform basic reading, writing, and math (Exhibit 4F, page 3).

Additionally, the claimant's credibility is not helped by her criminal history. She has a legal history of two assault charges, two identity theft charges, and two theft by deception charges (Exhibit 4F, page 3).

The claimant's impairments have clearly had a significant impact on her functioning, but is seems apparent that the claimant has exaggerated that impact. However, some of her subjective allegations are credible, and the credible portions are reflected in the residual functional capacity

8

>shown below.  The residual functional capacity completed by the undersigned gives the claimant the benefit of the doubt whenever possible regarding her subjective allegations.

(AR. 15-16).

The court finds that the ALJ articulated explicit reasons as to why she found claimant's testimony less than fully credible. The court finds that the ALJ's credibility decision is supported by substantial evidence and should not be disturbed.  <u>Kirk</u>, 667 F.2d at 538.

Lastly, the claimant argues that the ALJ's hypothetical questions to the vocational expert did not accurately portray the claimant's ailments because the ALJ stated in the hypothetical question that the claimant had a limited ability to read and write when the claimant is actually illiterate.  The claimant supports her argument by pointing to her testimony during the first administrative hearing. (AR 306-07).  She testified as follows:

>Q. And were you in regular classes or special ed?
>
>A. No, I was in regular classes.
>
>Q. Are you able to read?  Can you read the newspaper and understand it?
>
>A. No.
>
>Q. Can you read the letters you get from Social Security?
>
>A. No, not most of them.
>
>Q. How about writing, could you write a letter if you had to?
>
>A. I can write but I can't spell or nothing.

(AR 306-07).

An ALJ's hypothetical questions to a vocational expert need only include the limitations of the claimant that the ALJ accepts as credible and that are supported by the evidence. <u>Delgado v. Commissioner of Social Security</u>, 30 Fed. Appx. 542, 2002 WL 343402, *5(6th Cir. 2002). Here, the ALJ included in her hypothetical question the fact that the claimant had a sixth grade education, with limited reading and writing.

The court finds that the ALJ's limitation on claimant's ability to read and write is supported by the record. Specifically, the record contains evidence that the claimant is not completely illiterate as she can complete a medical history form, albeit in a rudimentary manner. (AR 90-96, 99, 258-264). The claimant also told Dr. Eggerman that she attended regular classes in elementary school and is able to perform basic reading, writing, and math (Exhibit 4F, page 3). Accordingly, the court finds the ALJ's hypothetical question contained the limitations of the claimant that the ALJ accepted as credible and were supported by the record.

The vocational expert opined that given such limitations on claimant's education, including other limitations identified by the ALJ, the claimant could perform the jobs of an unskilled, light cleaner, an unskilled, light inspector, a machine tender and a hand packer.

The claimant argues that the ALJ's decision is not based on substantial evidence because the vocational expert did not compare the jobs she listed for the claimant with the jobs listed

10

in the Dictionary of Occupational Titles (DOT). She argues that this is an affirmative duty of the ALJ to ask whether there is any discrepancy between the DOT and her analysis, and since the ALJ did not ask, it is reversible error. The claimant argues that the ALJ's failure to inquire as to whether there was a conflict is not harmless error because the jobs listed for the claimant are identified in the DOT as requiring the ability to read between 95-120 words per minute, which she alleges she cannot do.

The claimant is correct that Social Security ruling 00-4p requires an ALJ to ask the vocational expert if there are any conflicts between his testimony and the DOT. Here, the ALJ's failure to ask is harmless error because no conflict existed.

The claimant has the burden of proving she is disabled and, therefore, entitled to benefits. <u>Abbott v. Sullivan</u>, 905 F.2d 918, 923 (6th Cir. 1990). Here, the claimant alleges she is functionally illiterate. There is no evidence in the record, however, to support claimant's claim. The ALJ included in her RFC finding that the claimant had a 6th grade education with limited reading and writing. Relying on this information, as well as other restrictions, the vocational expert identified jobs the claimant could perform.

At least two of the jobs the vocational expert identified, cleaner and hand packer, required an ability to read at a level 1. Level 1 is the lowest reading level and requires the claimant to recognize the meaning of 2,500 (two-or three-syllable) words,

11

read at a rate of 95-120 words a minute, and be able to compare similarities and differences between words and numbers.  There is no evidence to establish that the claimant cannot read at this level.  She testified that she could not read very well, but the ALJ found her not totally credible.  The record reflects, as discussed above, that the claimant was able to read and complete medical history forms, and she told Dr. Eggerman that she could perform basic reading and writing.

An ALJ may rely on a vocational expert's testimony notwithstanding a contradiction in the DOT if the expert is found to be credible and the question posed accurately reflects the claimants limitations.  <u>Strong v. Social Security Administration</u>, 88 Fed. Appx. 841, 846-47 (6th Cir. 2004).  Here, the ALJ did not find the claimant was illiterate, but stated the claimant had limited reading.  The court finds that the ALJ's hypothetical accurately reflected the ALJ's RFC findings, and her failure to inquire whether a conflict existed between the vocational expert's testimony and the DOT was harmless error.

The ALJ's decision is supported by substantial evidence and should be affirmed.

Therefore, the court being sufficiently advised,

**IT IS ORDERED** that the motion for summary judgment of the claimant (Doc. 9) be, and it hereby is, **denied**, and that the cross-motion for summary judgment of the Commissioner (Doc. 12) be, and it hereby is, **granted**.  This matter shall be dismissed and stricken from the docket of this court.

This ___ day of March, 2007.

 Signed By:
**_William O. Bertelsman_** WOB
**United States District Judge**